# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

B & D LAND AND LIVESTOCK CO.,
an Iowa corporation,

        Plaintiff,

vs.

CHUCK CONNER, Acting Secretary,
United States Department of Agriculture,

        Defendant.

No. C 07-3070-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION**

———————————

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *1. The parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *2. Prior litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *3. The USDA's decision now at issue* . . . . . . . . . . . . . . . . . . 5
      *4. The present action* . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *B. Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *1. The tract in question* . . . . . . . . . . . . . . . . . . . . . . . 10
      *2. The parties' renewed investigations* . . . . . . . . . . . . . . . . 11
      *3. The hearing officer's decision* . . . . . . . . . . . . . . . . . . 14
      *4. Subsequent events* . . . . . . . . . . . . . . . . . . . . . . . . . 15

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   *A. Availability Of Injunctive Relief* . . . . . . . . . . . . . . . . . . . . . . 17
   *B. Standards For Preliminary Injunctive Relief* . . . . . . . . . . . . . . . . . 20
   *C. Application Of The Standards* . . . . . . . . . . . . . . . . . . . . . . . . 22
      *1. Likelihood of success* . . . . . . . . . . . . . . . . . . . . . . . 22
      *2. Threat of irreparable harm* . . . . . . . . . . . . . . . . . . . . 23
      *3. Balance of harms* . . . . . . . . . . . . . . . . . . . . . . . . . 27

       *4.     The public interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    *D.  The Bond Requirement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**III.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

T his is an action for judicial review of a final agency determination by the United States Department of Agriculture (USDA) that the plaintiff has improperly "converted" certain "wetland" in violation of the "Swampbuster" Act, 16 U.S.C. §§ 3801, 3821-24. This matter comes before the court pursuant to the plaintiff's November 30, 2007, Motion For Preliminary Injunction (docket no. 8). The plaintiff seeks an order preliminarily enjoining the Secretary of Agriculture from pursuing enforcement action against the plaintiff, from denying the payment of farm program benefits, and from attempting to collect previously paid farm program benefits on account of the USDA's final agency determination on the conversion of wetlands during the pendency of this judicial review action. The court has heard oral arguments on the plaintiff's motion for preliminary injunction and now enters its ruling on that motion.

# I.  INTRODUCTION

## A.  Procedural Background

### 1.  The parties

The plaintiff in this action, B & D Land and Livestock Company,[1] is an Iowa corporation with its registered agent living in Franklin County, Iowa.  The defendant in this action is Chuck Conner, the Acting Secretary (the Secretary) of the USDA.  B & D alleges, and the Secretary does not dispute, that as the Acting Secretary of the USDA, Conner is ultimately responsible for the final agency actions of the USDA at issue in this case.

B & D alleges that it owns real estate in Cerro Gordo County, Iowa, that is operated as a farm producing #2 yellow corn and soybeans.  The farm includes land identified as Section 32, Owen Township, Cerro Gordo County, Iowa, labeled by the USDA as Farm Number f2091, tract number t1653.  B & D purchased t1653 in 1997.  The USDA determined in 1999 that t1653 contains "wetlands," and subsequently determined that 0.9 acres of those "wetlands" had been improperly "converted" by B & D in 2000 to make possible the production of agricultural commodities on that land in violation of the "Swampbuster" Act, 16 U.S.C. §§ 3801, 3821-24.  The consequences of such a determination include ineligibility for USDA farm program benefits.

### 2.  Prior litigation

This action is the third one arising from the Secretary's determination that B & D "converted" certain "wetland" on t1653 in 2000.  B & D filed its first action for judicial review on July 10, 2002, disputing the Secretary's determination that B & D had

---

[1] B & D alleges that it is identified in USDA records as B & D Land and Livestock, Inc.

"converted" 0.9 acres of "wetland" on t1653. *See B & D Land and Livestock Co. v. Veneman*, No. C 02-3051-MWB (N.D. Iowa). On September 20, 2002, B & D filed a motion for preliminary injunction in that action asking the court to preliminarily enjoin the Secretary from pursuing enforcement action against it on account of the matter pending for judicial review and, more specifically, from denying the payment of any USDA benefits on account of that matter. By order dated November 15, 2002, the court entered an order "preliminarily enjoin[ing] [the Secretary] from pursuing, instituting, continuing, or completing any and all enforcement actions, including, but not limited to, certification of the ineligibility of the plaintiff or any of its shareholders for farm program benefits pursuant to the Food Security Act, 16 U.S.C. §§ 3821-3824, as amended, until such time as th[e] preliminary injunction is dissolved or vacated, by this court or a reviewing court." *B & D Land and Livestock Co. v. Veneman*, 231 F. Supp. 2d 895, 914 (N.D. Iowa 2002) (*B & D I*). Following the court's entry of the preliminary injunction, the court remanded B & D's first judicial review action, at the Secretary's request, for further review upon a complete record. *B & D Land and Livestock Co. v. Veneman*, No. C 02-3051-MWB, slip op. (N.D. Iowa Jan. 18, 2003).

After remand, however, the Secretary determined that the USDA would stand upon its prior determination that B & D had "converted" certain "wetland" in 2000 and its further determination that B & D was not entitled to equitable relief from the consequences of such a "conversion." Therefore, B & D brought a second action for judicial review on September 30, 2003, *B & D Land and Livestock Co. v. Veneman*, No. C 03-3086-MWB (N.D. Iowa). B & D did not seek a preliminary injunction on enforcement action by the USDA during the pendency of its second action for judicial review, however, because the USDA took no enforcement action during the pendency of that action. On August 17, 2004, the court rendered its decision in B & D's second action for judicial review. *B & D*

*Land and Livestock Co. v. Veneman*, 332 F. Supp. 2d 1200 (N.D. Iowa 2004) (*B & D II*).
In its order, the court found and declared "that the 1999 wetland determination was subject
to 'appeal' in the administrative proceedings concerning B & D's purported wetland
'conversion' violation, and the agency's final determination to the contrary was arbitrary
and capricious, an abuse of discretion, and contrary to law." *B & D II*, 332 F. Supp. 2d
at 1216. The court further held that "the Director Review Determination as to Tract
# 1653 is vacated in its entirety and this case is remanded for agency action in conformity
with the court's judgment." *Id.*

### 3.     The USDA's decision now at issue

The parties engaged in further administrative proceedings pursuant to the court's
second remand order. The results of those proceedings left B & D no happier than the
prior agency determinations had, however. By letter dated January 22, 2007, Richard Van
Klaveren, State Conservationist for the National Resources Conservation Service (NRCS),
a department of the USDA, notified B & D that the NRCS had fully re-examined the sites
in question and the records and had determined that the certified wetland determinations
conducted in 1999 were correct and, furthermore, that B & D's removal of woody
vegetation in 2000 was a "conversion" of 0.9 acres of "wetland." The NRCS decision was
based on a November 9, 2006, highly erodible land and wetland conservation
determination completed by Tony Moore, designated conservationist. The NRCS letter
stated, further, that the NRCS had found no applicable exemptions for conversion of the
wetland in question.

B & D appealed the November 9, 2006, wetland determination to the National
Appeals Division (NAD) of the USDA. The NAD hearing officer, Michael R. Stewart,
held an evidentiary appeal hearing on B & D's appeal on June 27, 2007, in Mason City,
Iowa. Following that hearing, in a decision dated August 30, 2007, the hearing officer

upheld the agency's November 9, 2006, wetland conservation determination. Neither party sought a director's review of the NAD decision. Therefore, the NAD decision constitutes final administrative action by the Secretary.

### 4. *The present action*

B & D now seeks judicial review of the NAD's August 30, 2007, final determination. In a Complaint filed October 4, 2007, B & D seeks declaratory judgment, as follows:

> 31. The Final Agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority, or limitations or short of statutory rights; was without observance of procedure required by law, and was unsupported by substantial evidence for reasons that include the following:
>
> A. The evidence of inundation and saturation gathered by NRCS was not gathered following the wetland delineation methodology to be used by NRCS and is thus not reliable.
>
> B. There is persuasive evidence that an agricultural commodity was produced at least once prior to December 23, 1985 on the delineated wetland and converted wetland making it prior converted cropland.
>
> C. The Plaintiff presented credible persuasive evidence of a drainage tile installed prior to December 23, 1985 which would remove the wetland hydrology for Site #3, making it a converted wetland converted before December 23, 1985.
>
> D. The Plaintiff produced credible persuasive evidence that the road ditch removes the wetland hydrology from Site #1, making it a converted wetland converted before December 23, 1985.

6

E.    Production of an agricultural commodity at least once prior to December 23, 1985 is not necessary to remain eligible for USDA program benefits when an agricultural commodity is produced on a converted wetland if the conversion of the wetland occurred prior to December 23, 1985.

Complaint (docket no. 2), ¶ 31. B & D also demands judgment as follows:

A.    That this Court declare that the Agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority or limitations or short of statutory right; was without observance of procedure required by law, and was unsupported by substantial evidence, all in violation of 5 U.S.C. § 706.

B.    That this Court remand the matter to the Defendant with specific instructions that the Defendant determine:

1.    that Plaintiff's removal of woody vegetation from t1653 does not make it ineligible for farm program benefits and,

2.    that any wetlands on t1653 are converted wetlands converted prior to December 23, 1985.

C.    That this Court find the position of the United States was not substantially justified and grant Plaintiff reasonable attorney fees pursuant to the provisions of 28 U.S.C. § 2412.

D.    That this Court grant Plaintiff costs of suit herein.

E.    That the Court grant such further and other relief as this Court deems appropriate.

Complaint, Demand for Judgment. The Secretary filed an Answer (docket no. 7) on November 21, 2007, in which the Secretary denies that B & D is entitled to any of the

relief that B & D requests and prays, further, that the court dismiss B & D's action, with costs to B & D.  Answer (docket no. 7) (Prayer).

On November 30, 2007, B & D filed the Motion For Preliminary Injunction (docket no. 8) now before the court.  In its motion, B & D alleges, *inter alia*, the following:

A.  There has been final agency action,

B.  which action is pursuant to a federal statute (16 U.S.C. § 3821-24),

C.  giving this Court jurisdiction on account of a "federal question,"

D.  which agency action will cause Plaintiff and affiliate Larry Doane to suffer irreparable damage if farm program benefits are denied to them pending this judicial review and if collection action is begun on past benefits while this judicial review is pending,

E.  for which the Plaintiff and Larry Doane have no other adequate remedy but a preliminary injunction,

F.  the harm to Defendant from granting a preliminary injunction is small in comparison to Plaintiff's and Larry Doane's harm if the injunction is not granted, and

G.  the damage to Defendant from granting an injunction is less than $1,000.

Plaintiff's Motion For Preliminary Injunction (docket no. 8) (Therefore clause).  In light of these allegations, B & D prays for the following relief:

Plaintiff asks the Court to preliminarily enjoin the Defendant from pursuing, instituting, continuing, or completing any and all enforcement action against the Plaintiff or Larry Doane on account of the USDA's final agency action for which judicial review is sought in this court and further from denying the payment of or attempting to collect previously paid benefits to the Plaintiff or Larry Doane on account of USDA's final agency action until such time as the preliminary injunction is dissolved or vacated.

Plaintiff's Motion For Preliminary Injunction, Prayer. B & D also requested oral arguments on its Motion For Preliminary Injunction. *Id.* The Secretary filed a Brief In Opposition To Motion For Preliminary Injunction (docket no. 9) on December 12, 2007, asserting that actions concerning B & D's farm program benefits cannot be enjoined and, in the alternative, that B & D cannot show any threat of irreparable harm, because counsel for the USDA has advised B & D's counsel by letter that the USDA will not take certain enforcement action during the pendency of this action for judicial review.

By order dated December 20, 2007, the court set oral arguments on B & D's Motion For Preliminary Injunction for January 16, 2008, a mutually convenient date determined after consultation with the parties. *See* Order (docket no. 10). No party requested a "live" evidentiary hearing in order to present evidence in the manner required by the court's December 20, 2007, order. Therefore, the oral arguments on B & D's Motion For Preliminary Injunction were conducted telephonically. At the oral arguments, plaintiff B & D was represented by Thomas A. Lawler of Lawler & Swanson, P.L.C., in Parkersburg, Iowa. The Secretary was represented by Assistant United States Attorney Martha A. Fagg from the United States Attorney's Office in Sioux City, Iowa.

The Motion For Preliminary Injunction is now fully submitted.

## B. *Findings Of Fact*

The court makes the following findings of fact based upon review of the record presented by the parties for purposes of disposition of B & D's Motion For Preliminary Injunction. In doing so, however, the court is mindful of the general rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *accord National Credit Union Admin. Bd. v. Johnson*, 133 F.3d 1097, 1103

n.5 (8th Cir. 1998) (quoting this principle from *Camenisch*); *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995) (citing this statement from *Camenisch* as the "general rule" for findings of fact and conclusions of law in preliminary injunction rulings).

### 1. *The tract in question*

B & D purchased t1653 in 1997. Larry Doane, an affiliated person of B & D, testified at the administrative evidentiary hearing that the tenant on the tract from 1972 to 1986, Marvin Gaubatz, had told him that he farmed the tract and that there were no trees on the tract other than some trees in the fencerow. Therefore, Doane testified that Gaubatz told him that he was able to grow row crops on the entire tract. Doane also presented at the administrative evidentiary hearing aerial photographs from 1985 showing no trees on the portion of t1653 subsequently designated "converted wetland." From 1987 to 1997, t1653 was enrolled in the Conservation Reserve Program (CRP) and, consequently, no crops were grown on the tract during that time. Plaintiff's Appendix, 84-85.[2] In 1999, however, after B & D had purchased the tract, the NRCS made a wetland determination concerning t1653 in which the NRCS determined that there were 1.8 acres of wetland in field #1, 0.27 acres of wetland in unnumbered field 1, and 1.7 acres of wetland in unnumbered field 2. In the spring of 2000, B & D removed woody vegetation from t1653, which led the NRCS to determine that B & D had "converted" 0.9 acres of "wetland" in unnumbered field 1. The results of the pertinent administrative proceedings and judicial review of the administrative action concerning that determination were discussed above.

---

[2]The excerpts of the transcript of the administrative evidentiary hearing are particularly difficult to evaluate, because there is often little indication in the excerpts submitted, and none in the table of contents of the Plaintiff's Appendix, of whose testimony is presented in each excerpt.

## 2.    *The parties' renewed investigations*

For present purposes, the focus is on the evidence generated by the NRCS and B & D in the course of the administrative proceedings following the court's second remand. Following that second remand, the USDA conducted a review of the 1999 wetland determination. As part of that review, on April 29, 2005, NRCS personnel, including investigator Jim Gertsma, went to what is now described as site 3 on t1653, which is 3.7 acres in the northeast corner of B & D's farm, to review the prior determination that site 3 contains hydric soils. Gertsma's data forms, Plaintiff's Appendix at 1-18, indicate that he found hydric soils, but no surface water, no free water in a test pit, and a depth to saturated soil of 35 inches or more.

Subsequently, the USDA attempted to verify B & D's claim that there was drainage tile in site 3, which would remove wetland hydrology. On April 21, 2006, the USDA hired a private contractor, Mr. Ries, to verify the presence or absence of drainage tile on the site. Tony Moore, the NRCS district conservationist, and David Rohlf, a drainage engineer employed by the NRCS, were present at the time of the contractor's investigation, along with Larry Doane. Plaintiff's Appendix at 19-20. The contractor did locate drainage tile on the tract by digging a hole with his backhoe. Plaintiff's Appendix at 21. That tile was located approximately where the contractor had previously found tile while doing tiling for the owner of the land to the north of site 3. Plaintiff's Appendix at 22-25. There is no evidence that the tiling was installed by B & D or, indeed, that it was installed after 1985. As soon as the tile was broken during the NRCS investigation in April 2006, water came "boiling out" and filled the hole, but did not overflow it. Plaintiff's Appendix at 25. Mr. Rohlf, the NRCS drainage engineer present, commented at the time that the presence of the tile indicated that the tract was "prior converted wetland," meaning converted prior to December 23, 1985. Plaintiff's Appendix at 25-26.

On November 9, 2006, Mr. Moore completed a Highly Erodible Land and Wetland Conservation Determination (November 9, 2006, Wetland Conservation Determination). Plaintiff's Appendix at 30-32. In his November 9, 2006, Wetland Conservation Determination, Mr. Moore concluded that 0.9 acres of site 3 were still properly designated "converted wetland," based on the April 14, 2000, determination and certification. The November 9, 2006, Wetland Conservation Determination does not provide any explanation of the basis for the determination, although it does indicate the presence of hydric soils on the tract. Mr. Moore testified at the administrative hearing on B & D's appeal of his determination that he believed that the tile drainage system probably had not been functioning as of December 23, 1985, and was not functioning at the time it was rediscovered, because the water would not have "boiled out" of the tile if it had been functioning, and other wetland indications, such as woody vegetation, would not have been present. Plaintiff's Appendix at 26 & 121. Mr. Moore did not investigate prior to the administrative hearing whether the tile drainage system was actually plugged, however. B & D disputes that there were any indications of wetlands on the pertinent portion of the tract in 1985, because, for example, B & D has presented evidence that there were no trees on the pertinent portion of the tract in aerial photographs from 1985, and evidence that crops were grown on the entire tract through the 1985 season.

By letter dated January 22, 2007, Richard Van Klaveren, the State Conservationist for the NRCS, advised B & D of the NRCS's final technical determination concerning the presence of wetlands on t1653. The letter stated, in pertinent part, "NRCS has fully re-examined the site and the records and determined that the certified wetland determination conducted in 1999 was correct as defined in 7 C.F.R. Part 12." Plaintiff's Appendix at 28. The letter stated, further, that, in 2000, B & D had cleared woody vegetation from

the area designated wetland, and that, as a result of removal of woody vegetation, production of crops was made possible. Ultimately, the letter concluded as follows:

> NRCS has determined that the area in question was a wetland. Further, NRCS has determined that you removed woody vegetation and this action made production of a commodity crop possible. The land was converted as defined in 7 C.F.R. § 12.2 "converted wetland" and § 12.4(a)(3).
>
> Finally, NRCS has reviewed all potential exemptions provided in 7 C.F.R. § 12.5(b) and has determined that no exemptions apply. The appropriate USDA wetland label is CW-2000 (Converted Wetland in year 2000) and is designated as such on the attached "certified" Highly Erodible Land and Wetland Determination NRCS-CPA-026E and map.

Plaintiff's Appendix at 28. B & D appealed the NRCS November 9, 2006, Wetland Conservation Determination to the NAD.

In preparation for its appeal to the NAD, B & D hired an independent drainage engineer, Don Etler, of Kuehl & Prayer, Ltd., to review the wetland determinations on t1653 and to review the land surface and the drainage features that are on the land to determine if the wetland determinations were correct, and if not, how they were incorrect. Plaintiff's Appendix at 33-36 & 37 (report). Mr. Etler and other employees of Kuehl & Prayer, Ltd., visited the farm on May 2, 2007, and Mr. Etler subsequently prepared a written report. Plaintiff's Appendix at 36. Mr. Etler's opinions in his report differ dramatically from the NRCS's. For example, Mr. Etler states that, in his opinion, "NRCS has failed to properly delineate jurisdictional wetlands on the land [in question] owned by B & D Land and Livestock Company . . . because [the agency] has used routine procedures to delineate wetlands which do not take into account the significant hydrologic disturbances that have been proven to exist in both the northeast and southeast areas of the

farm." Plaintiff's Appendix at 47. His report indicates that the "disturbances" include the tile drainage system and a road bordering the tract. More specifically still, it is Mr. Etler's opinion "that the entire set of certified wetland determinations done by the NRCS dated January 20, 1999; June 13, 2000; and January 22, 2007 should be set aside as invalid." *Id.* Mr. Etler provided testimony consistent with his report at the administrative hearing. He also testified that Mr. Moore had erroneously concluded that the tile drainage system was not functioning because water had boiled out of the broken tile during Mr. Moore's investigation of the presence of the tile. Mr. Etler explained that, in his opinion, if the tile was plugged, then the hole would have filled full of water and saturated the ground, and would have continued to be fed by water from further up the line, but the ground was not saturated, and the hole did not overflow. Plaintiff's Appendix at 124-28.

### 3.     *The hearing officer's decision*

Hearing Officer Michael R. Stewart held an evidentiary hearing on B & D's administrative appeal on June 27, 2007. On August 30, 2007, the Hearing Officer issued an opinion concluding, in pertinent part, that B & D had not met its burden of proving by the preponderance of the evidence that the USDA's adverse determinations are erroneous. Therefore, he concluded that the NRCS's decision is not clearly erroneous. Plaintiff's Appendix at 13. Somewhat more specifically, the Hearing Officer acknowledged that there was a tile drainage system affecting the area designated "converted wetland," but found no persuasive evidence that production of an agricultural commodity occurred on that land before December 23, 1985. Plaintiff's Appendix at 12. He also found that the tile drainage system had not completely removed the wetland hydrology, because the area exhibits a predominance of hyrdophytic vegetation or soil saturation. *Id.* He also

concluded that he did not have the authority to make a determination on equitable relief. *Id.* at 12-13.

### 4.    *Subsequent events*

Neither party sought a director review of the NAD Hearing Officer's decision, so that decision became the final decision of the agency. B & D did, however, file the present action for judicial review on October 4, 2007.

On October 29, 2007, the Cerro Gordo County Farm Service Agency (FSA) sent Larry Doane a letter that stated, in pertinent part, the following:

> Based on the above information [concerning an agency determination that B & D has "converted" certain "wetland"], it has been determined that you, and the affiliate to your farm (B & D Land & Livestock) are not in compliance of Wetland Conservation provisions so you will be ineligible for future USDA payments until the wetland is restored to wetland status or mitigated to regain eligibility. You will also be required to repay all program payments earned from calendar year 2000 until now, including, but not limited to DCP, CRP, CDP, LDPs, etc.

Plaintiff's Appendix at 130. The letter then outlined the administrative procedures for B & D to appeal the denial of benefits. *Id.* at 131.

The Secretary maintains that the October 29, 2007, letter from FSA was automatically generated and sent, but that it was a "mistake." The Secretary points, instead, to a letter from the USDA's Regional Counsel sent to B & D's counsel on November 7, 2007, apparently in response to letters from B & D's counsel,[3] setting out the USDA's position on enforcement actions, as follows:

------

[3]The letters from B & D's counsel are not in the Plaintiff's Appendix, but are identified in the November 7, 2007, letter from USDA Regional Counsel as letters dated November 2 and 6, 2007.

> I do not believe that the injunction [apparently the one previously issued by this court in *B & D I*] applies as the benefits you are seeking are from the Commodity Credit Corporation, and as you already know, it is our position that the statutory provision precludes the Court from enjoining the Commodity Credit Corporation. 15 U.S.C. § 7146b(c). Nevertheless, I will instruct **FSA** to accept applications from B & D, while current litigation proceeds. Once the decision is rendered by the Court, there will be a calculation of all benefits received since the time of the conversion, including any benefits currently in process and part of the current litigation.
>
> Having said that, nothing in this letter should be construed to imply that USDA will not use all remedies available to it, or from arguing that the injunction is inapplicable to the Commodity Credit Corporation. If you believe that another injunction is necessary, then you should proceed accordingly as is in your client's best interest.

Plaintiff's Appendix at 132 (emphasis in the original).

The Secretary also asserts that, through counsel in this case, he assured B & D's counsel that B & D and Doane would be paid all benefits during the pendency of this action. As an attachment to his resistance, the Secretary has also submitted a copy of an e-mail dated November 7, 2007, from Regional Counsel to various FSA and NRCS personnel, to which a copy of the November 7, 2007, letter was attached, advising those personnel, in pertinent part, "Short answer is—PAY HIM!!!" Defendant's Opposition To Motion For Preliminary Injunction (docket no. 9) (attachment).

Apparently finding the assurances in the Regional Counsel's November 7, 2007, letter and any other assurances from the Secretary's counsel inadequate, B & D filed the motion for preliminary injunction presently before the court on November 30, 2007. At the oral arguments, B & D's counsel represented that he was unaware of the Regional

16

Counsel's November 7, 2007, e-mail until a copy of it was filed with the Secretary's Opposition on December 12, 2007, well after B & D filed its Motion For Preliminary Injunction. The court finds no evidence that B & D or its counsel was advised of any steps taken by the USDA's Regional Counsel to ensure that farm program benefits would continue to be paid to B & D and Doane until the Secretary filed his Opposition. At the oral arguments, the Secretary's counsel also reiterated her assurances that farm program benefits would be paid to B & D and Doane during the pendency of this action. Although the court finds that the assurances of the Secretary's attorneys were made in good faith, the court does not find that those assurances necessarily moot B & D's Motion For Preliminary Injunction for the reasons stated below.

## II. LEGAL ANALYSIS

### A. Availability Of Injunctive Relief

The Secretary contends that no preliminary injunction should issue in this case, because no injunction can issue against the Commodity Credit Corporation (CCC), the entity that funds domestic farm program benefits, based on an explicit anti-injunction statute. 15 U.S.C. § 7146b(c) ("[N]o attachment, injunction, garnishment or other similar process, mesne or final, shall be issued against the Corporation or its property."). The Secretary has raised this argument in each of the "Swampbuster" cases before this court in which the producer sought to enjoin enforcement actions for "wetland" violations pending disposition of the judicial review actions, and the court has rejected it each time it was raised. *See Branstad v. Glickman,* 118 F. Supp. 2d 925, 935 (N.D. Iowa 2000) (*Branstad I*); *Branstad v. Veneman,* 145 F. Supp. 2d 1011, 1021-22 (N.D. Iowa 2001) (*Branstad II*); *B & D I*, 231 F. Supp. 2d at 903-5.

More specifically, in the first incarnation of this argument, in *Branstad I*, the Secretary argued that, while the case had not been brought directly against the CCC, the practical effect of the injunction requested would affect the CCC's operation. 118 F. Supp. 2d at 935. This court rejected that argument, because that action was not brought against the CCC, no preliminary injunction in that action would be directed to the CCC, and a preliminary injunction would have no effect on the operation of the CCC, because all that would be enjoined until the conclusion of judicial review of USDA determinations would be a declaration by the USDA that the producers in question were ineligible for farm program benefits administered by the CCC. *See id.*; *B & D I*, 231 F. Supp. 2d at 904 (quoting *Branstad I*). In the next incarnation, the Secretary argued that the Eighth Circuit Court of Appeals had found in *Penner v. Madigan*, 974 F.2d 993 (8th Cir. 1992), that whether or not injunctive relief would affect payments administered by the CCC, and hence would run afoul of the anti-injunction statute, is "a difficult issue," but this court was unpersuaded by such *dicta*, where the court in *Penner* did not even reach that "difficult" question. *Branstad II*, 145 F. Supp. at 1021-22. Moreover, this court found that the issue simply was not a "difficult" one, because it was plain that no injunction would issue against the CCC or have any effect on the CCC, where such an injunction would only affect the USDA's decertification of the producers' eligibility for program benefits administered through the CCC. *Id.* In the third incarnation, in prior litigation between the parties in this case, the Secretary also raised the argument that any injunction would run afoul of 15 U.S.C. § 7146b(c), but made no attempt to modify its argument or to address the court's reasoning concerning the anti-injunction provisions protecting the CCC, or even to cite the court's prior decisions rejecting the Secretary's argument, so the court once again rejected the Secretary's argument. *B & D I*, 231 F. Supp. 2d at 904-05.

What is still surprising is not the novelty of the Secretary's present argument concerning a bar on injunctions against the CCC, but the Secretary's reassertion of that argument without so much as citing, confronting, discussing, or attempting to distinguish or refute this court's prior rejections in decisions that are directly on point. Rather, the Secretary attempts to resurrect this argument in this case simply by asserting that the court was wrong, without explaining how or why, and by adding as a new "twist" an assertion that this action is a suit against the Secretary in *all* of his official capacities, including his capacity as Chairman of the Board of Directors of the CCC. The Secretary asserts that, because B & D seeks payments from the CCC, and all payments at issue are funded by this one entity, the anti-injunction statute makes clear that the programs that the CCC funds cannot be enjoined. The court remains as unpersuaded by this argument that 15 U.S.C. § 7146b(c) somehow bars an injunction in this case as it was with each of the prior incarnations of this argument.

First, this action simply is not against the Secretary in *all* of his official capacities, it is an action for judicial review of a final administrative action of the USDA concerning "conversion" of "wetlands" brought against the Secretary as the party ultimately responsible for final determinations of the agency. Complaint, ¶¶ 1 & 5. Moreover, B & D's Motion For Preliminary Injunction alleges that the enforcement action B & D seeks to enjoin is the determination *by the USDA (through the FSA)* that B & D and Doane are ineligible for farm program benefits and must repay all program benefits earned from calendar year 2000 to date. Plaintiff's Motion For Preliminary Injunction (docket no. 8), ¶ 17 & Prayer. The CCC still is not a party to this action, the Secretary is not alleged to be acting in any capacity as an official of the CCC, no action of the CCC is alleged or complained about anywhere in the Complaint, and the operations of the CCC will not be affected by an injunction on decertification *by the USDA or FSA* of B & D's or Doane's

eligibility for farm program benefits. *See Branstad I*, 118 F. Supp. 2d at 935 (the case was not brought against the CCC and would not affect the operations of the CCC); *B & D I*, 231 F. Supp. 2d at 904-05 (same). The court cannot imagine what would have led the Secretary to believe that gross misrepresentation of the allegations of the Complaint and the Motion For Preliminary Injunction would carry the day.

Thus, the anti-injunction provisions regarding the CCC neither deprive this court of subject matter jurisdiction to issue a preliminary injunction against the Secretary, nor stand as some insuperable bar to issuance of a preliminary injunction in this case.

### B. Standards For Preliminary Injunctive Relief

The parties apparently agree, and the court finds, that 5 U.S.C. § 705 permits a reviewing court to enjoin agency action pending judicial review and that the standards for a preliminary injunction pending judicial review under the statute are the same as the standards for issuance of a preliminary injunction under the Federal Rules of Civil Procedure. *See Branstad I*, 118 F. Supp. 2d at 934 (so holding). As this court has explained in past cases, it is well-settled in this circuit that applications for preliminary injunctions are generally measured against the factors set forth in the seminal decision in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). *See Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 954-55 (N.D. Iowa 2006); *Doctor John's, Inc. v. City of Sioux City, Iowa,* 305 F. Supp. 2d 1022, 1033-34 (N.D. Iowa 2004); *Branstad I*, 118 F. Supp. 2d at 937; *Uncle B's Bakery, Inc. v. O'Rourke,* 920 F. Supp. 1405, 1411 (N.D. Iowa 1996); *accord Straights and Gays for Equality v. Osseo Area Sch. Dist.*, 471 F.3d 908, 911 (8th Cir. 2006) (same factors); *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (same factors). These so-called "*Dataphase* factors" include the following: (1) the movant's probability or likelihood of

success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest. *Dataphase,* 640 F.2d at 114; *accord Interbake Foods, L.L.C.*, 461 F. Supp. 2d at 955; *Doctor John's, Inc.,* 305 F. Supp. 2d at 1033; *Branstad I,* 118 F. Supp. 2d at 937 (quoting similar factors from *Entergy, Ark., Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir. 2000)); Fed. R. Civ. P. 65(b)(1).

When applying the *Dataphase* factors, the burden is on the movant to establish that a preliminary injunction is appropriate. *Lankford*, 451 F.3d at 503; *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994); *Modern Computer Sys., Inc., v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*). "'No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.'" *Baker Elec. Co-op.*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (citing *Dataphase*)); *accord Lankford*, 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*); *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir. 1999) ("These factors are not a rigid formula."). "'A district court has broad discretion when ruling on requests for preliminary injunctions, and [the appellate court] will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion.'" *Entergy, Ark., Inc.,* 210 F.3d at 898 (quoting *United Indus. Corp,* 140 F.3d at 1179); *accord Lankford*, 451 F.3d at 503. The court abuses its discretion "where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Lankford*, 451 F.3d at 503-04.

### C. Application Of The Standards

In this case, the Secretary challenges only B & D's ability to satisfy the second and fourth requirements for a preliminary injunction, the "irreparable harm" and "public interest" factors. As a matter of completeness, however, the court will consider, at least briefly, each of the four "*Dataphase* factors." *See Lankford*, 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*, 28 F.3d at 1472).

### 1. Likelihood of success

The first "*Dataphase* factor" that courts must consider when ruling on an application for a preliminary injunction—even if the Secretary does not challenge that factor here—is the likelihood or probability of success on the merits. *Dataphase*, 640 F.2d at 114. Likelihood of success on the merits requires that the movant find support for its position in governing law. *See, e.g., Baker Elec. Co-op.*, 28 F.3d at 1473-74 (Indian tribe's sovereignty to regulate electrical services); *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994) (first amendment and prior restraint of expression); *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556-58 (8th Cir. 1993) (Indian tribe's regulatory authority and authority of states to regulate activities on tribal lands); *Aziz v. Moore*, 8 F.3d 13, 15 (8th Cir. 1993) (denial of injunctive relief was proper because federal courts "must abstain from imposing injunctions on prison officials [in an action under 42 U.S.C. § 1983 action] 'in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief,'" quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). "[A]t the early stage of a preliminary injunction motion, the speculative nature of this particular ['likelihood of success'] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of

equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998) (internal citations and quotation marks omitted).  Thus, the court is not deciding whether the movant for a preliminary injunction will ultimately win. *Heather K. v. City of Mallard,* 887 F. Supp. 1249, 1258 (citing *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991)).

In this case, therefore, the court must determine whether there is support for B & D's position that it has not "converted" any "wetland" on t1653 in violation of the "Swampbuster" Act.  Here, B & D has cited sufficient evidence in the record—consisting, *inter alia*, of Mr. Etler's evaluation of the wetland characteristics of t1653 and the effect of drainage tiling and a road on such wetland characteristics on t1653, other evidence of the presence of tiling, evidence that a prior tenant farmed the entire tract, and evidence that there was no woody vegetation on the pertinent portion of the tract in 1985—to support B & D's contention that the "wetland" that it allegedly "converted" had been "converted" and farmed to produce an agricultural commodity at least once prior to December 23, 1985.

Thus, the first "*Dataphase* factor" is satisfied in this case.

### 2.    *Threat of irreparable harm*

The second "*Dataphase* factor"—and the first that the Secretary contests—is the threat of irreparable harm to the movant absent the injunction.  *Dataphase,* 640 F.2d at 114.  In this circuit, "a party moving for a preliminary injunction is required to show the threat of irreparable harm," *Baker Elec. Co-op.*, 28 F.3d at 1472 (citing *Modern Computer Sys.*, 871 F.2d at 738, and *Dataphase*), and the lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction.  *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) (citing *Modern Computer Sys.*, 871 F.2d at 738).  Stated

differently, "[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury." *Glenwood Bridge*, 940 F.2d at 371 (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)). More specifically, the Eighth Circuit Court of Appeals has held that

> the movant's failure to sustain its burden of proving irreparable harm ends the inquiry "and the denial of the injunctive request is warranted." [*Gelco*, 811 F.2d] at 420. *Accord Modern Computer Sys.*, 871 F.2d at 738; *Dataphase*, 640 F.2d at 114 n.9. We must inquire, then, whether [the movant] has met its burden of proving that it will suffer irreparable harm absent a preliminary injunction.

*Id.* The Eighth Circuit Court of Appeals has also explained,

> "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 506-07 (1959). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. *See Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297, 299 (8th Cir. 1996).

*Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir. 1999); *see Baker Elec. Co-op.,* 28 F.3d at 1472 ("No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance, they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show the threat of irreparable harm.") (internal quotation marks and citations omitted).

Sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.,* 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue. *Frank B. Hall & Co. v. Alexander & Alexander, Inc.,* 974 F.2d 1020, 1025 (8th Cir. 1992) (but finding in that case that the district court's

conclusion that there was an adequate remedy was based on an erroneous legal premise, and requiring a proper balance of *Dataphase* factors).

The Secretary argues that there is no threat of irreparable harm to B & D in this case, because, despite statutory language that the USDA believes precludes the issuance of an injunction, the USDA's Regional Counsel has assured B & D, by letter dated November 7, 2007, that B & D and Doane will continue to receive benefits while this litigation proceeds. The Secretary contends that the October 29, 2007, letter from FSA stating that benefits would be denied and past benefits from 2000 forward must be repaid was simply a *pro forma* letter following the usual protocols in "Swampbuster" proceedings—in short, that the October 29, 2007, letter was a "mistake." More specifically, the Secretary contends that the November 7, 2007, letter from Regional Counsel explained that the FSA would continue to accept the plaintiff's applications and would settle up any amounts owed once litigation concluded. The Secretary also represents that the Secretary's counsel in this action has informed B & D that benefit payments will continue. In light of these assurances, the Secretary argues that B & D cannot prove irreparable harm.

The court finds that the Secretary's characterization of the November 7, 2007, letter is not entirely accurate. As set forth more fully above, the letter does not promise that any applications for benefits will be processed or that any benefits will continue. Rather, it states that Regional Counsel "will instruct **FSA** to accept applications from B & D, while current litigation proceeds." Plaintiff's Appendix at 132 (emphasis in the original). A promise to "accept applications" is a far cry from a promise to process and approve applications or to continue to pay benefits without regard to the USDA's determination of a "wetland" violation or a promise not to declare B & D ineligible for such benefits based on the agency's determination of a "wetland" violation. The letter does state, "Once the

decision is rendered by the Court, there will be a calculation of all benefits received since the time of the conversion, including any benefits currently in process and part of the current litigation." *Id.* Nevertheless, the language used, at best, only implies that there will be no attempt to collect any benefits already paid during the pendency of the judicial review action. Indeed, such an implication is strongly undermined by the implicit threat that "nothing in this letter should be construed to imply that USDA will not use all remedies available to it." *Id.* In short, the letter from Regional Counsel does not fully mitigate the threat to B & D or Doane of enforcement action.

The court finds that B & D received further assurances from the USDA's litigation counsel that the USDA would pay benefits and would not pursue enforcement action, although the court finds no evidence that B & D or its counsel was advised of any steps taken by the USDA's Regional Counsel to ensure that farm program benefits would continue to be paid to B & D and Doane until the Secretary filed his Opposition. The court is also mindful that, at the oral arguments, the Secretary's litigation counsel also reiterated her assurances that farm program benefits would be paid to B & D and Doane during the pendency of this action. Again, the court finds that the assurances of the Secretary's attorneys were made in good faith, but the court does not find that those assurances necessarily moot B & D's Motion For Preliminary Injunction. In the absence of a preliminary injunction, nothing will preclude the Secretary from overruling his attorneys and, for that matter, nothing will preclude the Secretary's attorneys from changing their minds. Moreover, the court finds that the Secretary and his counsel have "danced" around the issue, where the November 7, 2007, letter is nowhere near as definite an assurance that benefits will continue and that enforcement action will be withheld as the Secretary has argued, the Secretary has continued to assert a flawed argument that the CCC's anti-injunction protection bars a preliminary injunction in this case, and the

Secretary has not demonstrated any willingness to enter into a voluntary preliminary injunction to eliminate any question about maintaining the *status quo* during the pendency of this action.

On B & D's side of the question, on the other hand, B & D's contention that a denial of present benefits or attempts to collect past benefits will force it into bankruptcy is credible. Furthermore, the loss of B & D's ability to continue its farming operations is not an injury for which there is an adequate remedy at law. *Baker Elec. Co-op.*, 28 F.3d at 1473 (sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law). Thus, the court finds that there is still a credible threat of irreparable harm to B & D in the absence of a preliminary injunction.

Therefore, contrary to the Secretary's contention, the court finds that B & D has established a threat of irreparable harm sufficient to satisfy the second "*Dataphase* factor."

### 3.    *Balance of harms*

The third "*Dataphase* factor," which the Secretary does not expressly contest, is the "balance of harms." *See Dataphase,* 640 F.2d at 114 (the third factor is the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties). The "balance of harms" analysis is not identical to the "irreparable harm" analysis. *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994). Irreparable harm focuses on the harm or potential harm to the movant of the opposing party's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. In contrast, the balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public. *Id.*; *see also Glenwood Bridge*, 940 F.2d at 372 (considering the effect of granting or denying the injunction on the public's interest in a public works

construction project as well as upon the parties in the balance of harm analysis); *Modern Computer Sys.*, 871 F.2d at 737-38 (harm to other interested parties also considered).

In conducting the "balance of harms" analysis required under *Dataphase*, it is obvious that an illusory harm to the movant will not outweigh any actual harm to the non-movant. *Frank B. Hall*, 974 F.2d at 1023. To determine what must be weighed, the court finds that courts of this circuit have looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op.*, 28 F.3d at 1473. Also, the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is relevant. *Id.* Another consideration in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action. *Sanborn Mfg.*, 997 F.2d at 489. Where the non-movant has taken such action, the balance of harms is readjusted, because the potential for economic or other harm to the movant has been eliminated. *Id.* (citing *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 774 (2d Cir. 1984), which held that injunctive relief was "wholly unnecessary" when the defendant had voluntarily brought his product labeled with the UL mark into compliance with UL standards and where there was not a likelihood of repetition or hazard to the public). Similarly, present harm as the result of past misconduct is not sufficient to justify the injury to the non-movant of granting a preliminary injunction requiring some additional corrective action, because such relief "goes beyond the purpose of a preliminary injunction." *Id.* at 490.

Here, B & D faces a real threat of harm from enforcement action by the USDA during the pendency of its action for judicial review. As this court explained in *B & D I*, " there must be something significant on the other side of the scales for this factor to weigh against the issuance of an injunction." 231 F. Supp. 2d at 912. Much as this court found in *B & D I*, there is no such significant counterbalancing interest. Any actual harm to the

USDA—that is, to the USDA's interest in wetland protection and not paying benefits to persons who violate wetland protection regulations—is slight, because the "converted" wetland in question is small, B & D has made a sufficient preliminary showing that any conversion would have minimal effect in light of the nature of the alleged "conversion" and the effects of an adjacent road and an adjacent drainage system on the land of another producer, and the USDA has the means to recover improperly paid benefits, if the USDA ultimately prevails. *See id.* (relying on similar circumstances in its analysis of the balance of harms in this plaintiff's first action for judicial review). Thus, the potential for long term harm to wetlands is insufficient to bar an injunction when that potential long term harm is balanced against the almost certain and permanent disaster that loss of farm program benefits and repayment of past benefits would be to B & D. *See Branstad I,* 118 F. Supp. 2d at 943 (citing *Baker Elec. Co-op.,* 28 F.3d at 1473, for consideration of the rights and economic interests of the parties on this factor in the *Dataphase* analysis). Moreover, for the reasons stated above, the court finds that the Secretary has not voluntarily taken remedial action to prevent harm to B & D where the court finds that the Secretary's assurances that benefits will be paid and enforcement action will be withheld are not sufficient to obviate the threat to B & D. *Sanborn Mfg.*, 997 F.2d at 489 (the court must consider whether the defendant has already voluntarily taken remedial action, and if so, the balance of harms must be readjusted). Finally, as in *B & D I,* the court finds that the preliminary injunction would only maintain the *status quo,* and B & D should not be effectively deprived of its right to judicial review by allowing enforcement action to proceed. 231 F. Supp. 2d at 912.

Thus, this factor also weighs in favor of the issuance of a preliminary injunction.

### 4.    *The public interest*

The final "*Dataphase* factor," and the only one besides "irreparable harm" that the Secretary expressly contests, is "the public interest." *See Branstad I*, 118 F. Supp. 2d at 943; *see also Pottgen*, 40 F.3d at 929; *Dataphase,* 640 F.2d at 114. The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. *Id.* However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, a preference for enjoining inequitable conduct, and the public's interest in minimizing unnecessary costs to be met from public coffers. *B & D I*, 231 F. Supp. 2d at 912 (citations and quotation marks omitted).

Here, the Secretary argues that Congress has declared that the public interest favors not issuing an injunction by establishing the anti-injunction protection for the CCC in 15 U.S.C. § 714b(c). Because the Secretary sees the language of the anti-injunction provision as an expression of public interest, the Secretary contends that it is difficult to find that the scales tip in favor of B & D's interest. This "bootstrapping" of the supposed public interest in protecting the CCC from injunctions, of course, has no effect in a case that does not involve any injunction on the CCC, as explained above. The relevant public interest, as this court has explained in past "Swampbuster" cases, is the public interest in prevention of wetlands conversion. *Branstad II,* 145 F. Supp. 2d at 1025; *B & D I*, 231 F. Supp. 2d at 913. However, the interests that the "Swampbuster" Act was designed to protect cannot justify arbitrary and capricious agency action or failure to maintain the *status quo* while judicial review of agency action is undertaken. *Id.* at 1024; *B & D I*, 231 F. Supp. 2d at 913 (citing *Branstad II*).

Thus, the "public interest" factor does not weigh against issuance of the preliminary injunction requested in this case. Because the balance of all four "*Dataphase* factors"

weighs in favor of issuance of a preliminary injunction on enforcement action by the USDA, such an injunction is appropriate in this case.

## D. The Bond Requirement

Subsection (c) of Rule 65 of the Federal Rules of Civil Procedure requires the movant to give security for the issuance of a preliminary injunction. *See* FED. R. CIV. P. 65(c). As this court explained in *Branstad I*, "The bond posted under Rule 65(c) 'is a security device, not a limit on the damages the [USDA] defendants may obtain against [B & D] if the facts warrant such an award.'" *Branstad I*, 118 F.Supp.2d at 944 (quoting *Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997)). Furthermore, "[a]lthough [the Eighth Circuit Court of Appeals] allow[s] the district court much discretion in setting bond, [it] will reverse [the district court's] order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir.1991) (citing *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989)).

If the court finds that a preliminary injunction should issue, B & D contends that a bond in the amount of $1,000, either cash or surety, is reasonable. The Secretary offers no contrary contention. In *B & D I*, this court considered the per day interest on farm program benefits that the USDA had already demanded that B & D repay as well as the reasonable estimated costs of restoring the wetlands in question, and concluded that a bond in the amount of $1,000 was appropriate. 231 F. Supp. 2d at 913-14. In the absence of any showing that a bond in a larger amount is required in this case, the court again concludes that a bond in the amount of $1,000, either cash or surety, is sufficient in this case.

### III. CONCLUSION

The court concludes that, under the circumstances presented here, B & D has satisfied each of the "*Dataphase* factors" for issuance of a preliminary injunction on enforcement actions by the USDA for a purported "wetland" violation pending judicial review. Furthermore, the court finds no other impediment to the issuance of such an injunction and that such an injunction should issue upon the posting of bond in the amount of $1,000.

THEREFORE, plaintiff B & D's November 30, 2007, Motion For Preliminary Injunction (docket no. 8) is **granted**. A preliminary injunction shall issue in accordance with 5 U.S.C. § 705, Rule 65 of the Federal Rules of Civil Procedure, and this order.

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2008.

_Mark W. Bennett_
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| B & D LAND AND LIVESTOCK CO.,<br>an Iowa corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>CHUCK CONNER, Acting Secretary,<br>United States Department of Agriculture,<br><br>        Defendant. | No. C 07-3070-MWB<br><br>**PRELIMINARY INJUNCTION** |

—————————————

**WHEREAS**, this matter came before the court on the November 30, 2007, Motion For Preliminary Injunction (docket no. 8) of plaintiff B & D Land and Livestock Company,

**AND WHEREAS**, pursuant to 5 U.S.C. § 705 and Rule 65 of the Federal Rules of Civil Procedure, the court finds that enforcement actions of the United States Department of Agriculture, or any of its subdivisions or administrative departments, agents, or officials, pursuant to the final determination of the agency on August 30, 2007, by National Appeals Division (NAD) hearing officer, Michael R. Stewart, concerning tract t1653 would impose irreparable harm or injury or the threat of such irreparable harm or injury upon the plaintiff herein and affiliated persons, and upon further consideration of all other relevant factors,

**CHUCK CONNER**, Acting Secretary of the United States Department of Agriculture, is hereby **preliminarily enjoined** from pursuing, instituting, continuing, or completing any and all enforcement actions against the Plaintiff or Larry Doane on account of the USDA's final agency action for which judicial review is sought in this court and

further from denying the payment of any farm program benefits or attempting to collect previously paid benefits to the Plaintiff or Larry Doane on account of USDA's final agency action until such time as this preliminary injunction is dissolved or vacated.

This preliminary injunction shall be binding upon the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order.

This preliminary injunction shall issue upon the posting by the plaintiff herein of a bond, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure and such other rules, regulations, or statutes as shall apply, in the sum of one thousand dollars ($1,000).

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA